IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **PHILLIP FINDLEY,** | |
| **Plaintiff,** | |
| v. | 1:06-cv-661-WSD |
| **WANDA DUNHAM,** individually and in her official capacity as Interim Chief of the MARTA Police Department, **R.L. RICHARDSON,** individually and in his official capacity, **TONI SHAVERS,** individually and in her official capacity, | |
| **Defendants.** | |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [24]. Also before the Court is Plaintiff Phillip Findley's ("Findley") Motion for Extension of Time to Respond to Summary Judgment [28].[1]

---

[1] Plaintiff filed a response to Defendants' Summary Judgment Motion [24] on time. Plaintiffs' Motion for Extension of Time [28] is therefore DENIED as MOOT.

## I. BACKGROUND

Plaintiff Phillip Findley is a former Lieutenant and 22-year veteran of the MARTA Police Department. Findley, white, asserts a claim under 42 U.S.C. § 1983 that Defendants Wanda Dunham ("Dunham"), R.L. Richardson ("Richardson"), and Toni Shavers ("Shavers'), black, discriminated against him because of his race and retaliated against him for bringing a civil rights lawsuit against Dunham and Richardson in September of 2005, in violation of the First and Fourteenth Amendments to the Constitution.

In 2004, Findley was one of two MARTA police lieutenants working under the direct supervision of Richardson, black, who held the rank of Major.[2] Richardson issued a number of disciplinary write-ups against Findley, which Findley alleges were motivated racially and not based on any actual misconduct. In August of 2005, Richardson placed Findley on a 90-day Corrective Action Plan (the "Plan").

On September 22, 2005, in response to being placed on the Plan, Findley filed a civil rights lawsuit against Dunham, who then held the position of Assistant

---

[2] The other lieutenant under Richardson's command was Shavers

Chief,[3] Major Richardson, Chief Gene Wilson, and Carol Johnson. In November of 2005, Richardson recommended Findley's termination. Wilson and Dunham rejected the recommendation. Later that month, Richardson was transferred to a different precinct. Major Anthony Eskew ("Eskew"), white, became Findley's new supervisor.

On January 24, 2006, Findley, while serving as watch commander, received a call that a robbery suspect was aboard a MARTA bus. MARTA officers pulled the bus over to search it. It is undisputed that Findley drove past the pulled over bus without stopping to investigate it personally. It is also undisputed that Findley did not notify the Duty Commander of the incident.

Defendants allege that Findley was negligent both in his failure to stop and investigate the situation personally and in his failure to report the incident to the Duty Commander. Findley alleges that he was in contact with officers on the scene, who told him that the stopped bus was clear, and that the robbery suspect was thought to be on a different MARTA bus, which Findley claims he continued on to pursue rather than investigate the stopped bus. Findley also alleges the

---

[3] At the time of the filing of the present lawsuit, Dunham held the position of Interim Police Chief.

-3-

incident was, in his professional judgment, not significant enough to justify notifying the Duty Commander.

Three days later, on January 27, 2006, there was a robbery at the Decatur MARTA station. Findley and MARTA Police Major McKinzie discussed the robbery and the general increase in serious calls at that station. It is undisputed that Findley suggested to McKinzie that officers be assigned to the Decatur station more frequently in response to the increased number of serious calls, and that McKinzie agreed. The parties disagree over whether McKinzie then ordered Findley to schedule officers at the Decatur station more frequently, and, if so, the details of that order. Findley changed the schedule to increase the frequency of officer postings at the Decatur station, but he did not assign an officer to the station immediately. The next day, January 28, two assaults occurred at the Decatur station.

On January 30, 2006, Findley was placed on administrative leave with pay for the investigation of unspecified "misconduct." Findley was not told what misconduct was alleged. Findley was offered a chance to write a responsive statement to be considered in the investigation, but he declined to do so, apparently because he did not feel that he understood what misconduct was being alleged. On

January 31, 2006, Findley submitted a letter to Dunham requesting that she submit in writing the reasons he had been placed on leave, and accusing her of retaliating against him for "speaking out on matters of public concern," such as the arrest quota imposed by MARTA on its officers and the racism he alleged in the September, 2005 lawsuit. Findley also alleged that the act of placing him on administrative leave constituted a constructive discharge, and advised her that he was retiring, effective immediately. Dunham replied to Findley's January 31 letter on February 3, advising Findley again that he had been placed on paid leave, that Internal Affairs officers were prepared to complete the investigation, and asking him to clarify his intention to retire. On that same day, Findley voluntarily dismissed the civil rights lawsuit he had filed in September of 2005.

On February 6, Findley wrote another letter requesting a written description of the misconduct for which he was being investigated. Dunham replied by letter on February 10, advising Findley that he was on leave pending investigation of the January 24 and 27 incidents. In the letter, Dunham directed Findley to report to Internal Affairs so that the investigation could be completed.

On February 13, prior to any announcement of the conclusion of the investigation or any employment action by the MARTA Police Department,

Findley submitted a letter formally and finally announcing his retirement, effective immediately. A month later, on March 22, 2006, Findley filed this action.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 556 (11th Cir.1997) (per curiam) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 127 S.Ct 1769, 1776 (2007). Summary judgment is required to be granted on proper motion against a party who fails to make a sufficient showing to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

To state a *prima facie* case for discrimination, Plaintiffs must offer either direct evidence of racial animus, or substantial circumstantial evidence of discriminatory intent. See Schoenfield v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999). Findley does not assert any direct evidence of discriminatory animus.

To prove racial discrimination through circumstantial evidence, Findley must make a *prima facie* case by showing: (1) he was a member of a protected class; (2) he was subjected to an adverse employment action; (3) that he was qualified to do his job; and (4) that Defendants treated a similarly situated employee outside his classification more favorably.  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

If Findley successfully asserts a *prima facie* case of discrimination, it raises an inference of discriminatory intent, and the burden of production shifts to Defendants to rebut this inference by articulating a legitimate, non-discriminatory reason for their actions.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).  If Defendants are successful in rebutting the inference of discrimination, the burden of production shifts back to Findley to show that the reason for the adverse action was a mere pretext.  Id.

To state a *prima facie* case for First Amendment retaliation, Findley must show: (1) that he engaged in protected speech or association; (2) that he suffered an adverse employment action; and (3) the adverse employment action was casually linked to the protected activity.  Mounty Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

The presence of an adverse employment action is an element of the *prima facie* case for both of Findley's claims. Findley alleges that he was subjected to the adverse employment actions of being "terminated or forced to resign early." It is undisputed that Findley unconditionally resigned from the MARTA Police Department by February 13, 2003, when he submitted the letter containing his second, unequivocal, retirement announcement. It is clear from the record that Findley was not terminated–he resigned. There is no evidence that Findley was "forced" to resign early–that is, no reasonable jury could find that he was constructively discharged.

"To show constructive discharge, the employee must prove that his working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign." Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir. 1991) (quotation and citation omitted). Constructive discharge requires a showing of "a high degree of deterioration in an employee's working conditions, approaching the level of 'intolerable.'" Id. (citation omitted). Working conditions must be such that a *reasonable* person would feel compelled to resign: "Part of an employee's obligation to be *reasonable* is an obligation not to assume the worst,

and not to jump to conclusions too fast." Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987) (emphasis in original).

Findley has failed to make any showing to support his claim of constructive discharge. Even assuming there is some evidence in the record that Richardson discriminated against him racially, Richardson was transferred to another post nearly three months prior to the events that Findley alleges constructively discharged him. There is no evidence that Eskew, a white male, continued the discrimination alleged to have been practiced by Richardson.[4] There is no evidence that Findley suffered any kind of disciplinary or other adverse action after Eskew became his immediate supervisor. Findley did not even suffer disciplinary action for the January 24 and 27 incidents. His conduct was under review at the time he resigned, and no disciplinary action had yet been taken against him or even announced at the time of his resignation.

The administrative leave and investigation were not themselves "intolerable" such that a "reasonable person would feel compelled to resign." It is undisputed that granting leave with pay is MARTA Police Department policy for any ongoing investigation. It is further undisputed that Findley committed the acts

---

[4] The Court observes that Eskew is not a defendant in this lawsuit, and that Findley does not complain about Major Eskew's conduct or supervision.

for which he was investigated. Whether Findley's actions were justifiable is a matter of dispute between the parties, but there is no evidence that initiating an investigation to determine whether Findley's actions were justified was inappropriate or unreasonable in those circumstances. There is no evidence that placing Findley on paid leave pending an investigation was itself an intolerable or even uncommon action for the MARTA Police Department to take in light of Findley's conduct.

Dunham's letters to Findley before his final announcement of retirement specified that the investigation was being handled by Internal Affairs. Findley understood that the allegations of misconduct made against him were being evaluated by persons other than the supervisors that he accused or suspected of retaliation and discrimination. That is, Findley understood that the inquiry was being conducted by a separate, neutral, department traditionally charged with these kinds of inquiries. There is no evidence that Findley had any basis for suspecting Internal Affairs of complicity in the discrimination and retaliation he now alleges against Defendants. The undisputed facts are that Findley decided not to wait for the results of the investigation. Instead, either because he assumed the worst or jumped to a conclusion as to the investigation outcome, or because he was

frustrated and dissatisfied with his position, Findley preemptively and unconditionally resigned his job by announcing his retirement.[5]  Whatever the reason, no reasonable jury could find that his working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign.  There simply was no constructive discharge here.

## IV.  CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [24] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Time to Respond to Summary Judgment [28] is **DENIED** as moot.

The Clerk is directed to **CLOSE** this case.

---

[5] Findley alleges that the investigation had already been conducted by Shavers by February 3, 2006, that Internal Affairs never had any involvement with the investigation, and that the decision to terminate him already reached.  Even if this is true, Findley admits that he was unaware of Shaver's investigation at the time he resigned.  Findley had no reason to doubt that Internal Affairs was, as Dunham stated in her letter, conducting his investigation, even if this statement was in fact false.  No reasonable person in Findley's position, with his admitted lack of knowledge of the deception alleged on the part of Shaver and Dunham, could have found the situation intolerable prior to becoming aware of it.

**SO ORDERED** this 22nd day of June, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE